May it please the Court. Good morning, Your Honors. My name is Russell Petty, representing Dominick Bruno. I'd like to start the argument this morning by talking about the application of Section 1113. That was an argument first raised by the plan in their opposition brief to this Court. And looking over the documents, I don't think that our position is as fully developed as it could have been, so I'd like to try to fix that here. The plan's 1113 argument appears to be that, although Mr. Bruno didn't make a claim for breach of fiduciary duty, he should have, in order to properly plead, made a claim for breach of fiduciary duty. And had he done so, this claim would be barred by the six-year statute of limitations in 1113. In response, what we pointed out is that, again, Mr. Bruno had not made a claim for breach of fiduciary duty against the fiduciary, and that under Harris Trust, it's not required to bring a claim for breach of fiduciary duty in the context of a 1132A3 claim. And both of those are correct statement of law, but I don't think that's the best answer here. The best answer here is that the language of 1113 is clear that it is limited to a specific subtype of breach of fiduciary duty claim. Specifically, the language says that 1113 applies, quoting the language of the statute, to a fiduciary's breach of any responsibility, duty, or obligation under this part. Now, this part refers to part four of subchapter B, which is the, generally speaking, deals with the fiduciary, the standards for a fiduciary who's involved in making investment decisions. You know, it's got the prudent man rule and rule with respect to conflicts of interest, and none of that has anything to do with what Mr. Bruno is alleging occurred. Our allegations involve part one and part two, the reporting and disclosure obligation. So although Mr. Bruno did not make a claim for breach of fiduciary duty against a fiduciary, he could have without implicating 1113. How do you deal with Matthews, which seems to say that his fiduciary claims can only be made against a fiduciary? Well, you know, again, Matthews, and I've read that case carefully and also the case that it cites to, which is the Verity decision. And both of those cases do involve claims under part four, i.e., that, you know, an actual fiduciary, you know, and it's required under part four that you have an actual fiduciary that breaches a fiduciary duty. And so on its facts, Matthews was exactly correct. It was necessary for the plaintiff to prove that the defendant was acting as a fiduciary. But Matthews was wrong in sort of taking that rule, which was correct in that case, and importing it to A3, 1132A3 claims generally, because, as we know, Harris Trust is express that 1132A3 does not have any limitation on the universe of potential defendants so long as the plaintiff is seeking appropriate equitable relief in order to rectify some violation of ERISA or the plan. And I note that in the unfortunately short-lived Rose case, and I don't believe that's cited in the papers, but I think it came up since it was done, but that's 683 Fed 3rd 1113. And in order to prove that the defendant is acting as a fiduciary, if the defendant is not a fiduciary, that case is no longer good law in at least one point because of the Supreme Court's recent McCutcheon decision. But Rose imported Harris Trust into this circuit and was clear that one does not have to be a fiduciary in order to be a target of a A3 claim. Kennedy. You're citing cases that are not in your brief? Recent cases, Your Honor. I'll be happy to submit a letter. You have to fill out a gum sheet here, you know, so we can – I don't sit here taking notes of your citations. But let me ask you, because I can't write as fast as you talk, but how many of Time Warner's employees were enrolled in both plans? Your Honor, the – that's a fact that's not in the record. I could speak – roughly speaking, sort of outside the record, it's a – You don't know. I don't – I know, but – Let me ask you this. There was a meeting in 2008 where he sat down with, I believe, the representative of the plan, and that's when he said he first learned about this offset. That's correct, Your Honor. All right. Now, what was the date of that? I don't have a specific date of that, Your Honor. Mr. Bruno doesn't recall the specific date. He's just aware that it was sometime in the date that's referenced in the complaint. The complaint is as specific as we know, given the state of our knowledge at this time, Your Honor. And it says when? I believe it says sometime in 2008. I'd have to take a look at that, and I'd be happy to do that. Well, you know, that's kind of an important date if the statute of limitations is three years. Four years, Your Honor. Well, I said three years. It should be four years, Your Honor. It's the – California law borrows from – I mean, this Court in Wetzel said that we're borrowing the four-year statute of limitations set forth in California law for breach of contract. And so, you know, whenever it was in 2008, Your Honor. Well, what's – what about a breach of fiduciary relationship? How long is that? Well, again, Your Honor, if the – Tell me. How long is that? Well, again, that doesn't apply for reasons I said. But it's either three or six years, Your Honor, if we're talking about investment-type decisions. And, again, it doesn't apply because we're not talking about investment-type decisions. But 1113 applied, it's either three years from actual knowledge or six years – Whichever is – Absolutely. Whichever comes first. I think whichever comes last, Your Honor. But the – but, again, it's our position that statute clearly does not apply here because the – Is Wetzel workable? I mean, to date it from the date that a claim for benefits is termed down, I mean, is that workable in an equitable claim? Well, you know, I have some problems with calling this an equitable claim, Your Honor. And, by the way, the issue in Wetzel is the same issue that was faced in Wetzel. It's up for review by the Supreme Court in the Hymershoff matter. And so, you know, but sort of on a different issue than we currently face here. I'm looking – I'm looking at 1113. No action may be commenced under this subchapter with respect to fiduciary's breach of any responsibility, duty, obligation under this part or with respect to violation of this part after the earlier of – earlier of – I'm sorry, Your Honor.  or violation, or three years after the earlier of the breach or violation. So three years after after A, the date of the last action which constituted part of the breach of the violation, or B, in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or – or three years after the earliest date on which plaintiff had actual knowledge of the breach or violation. I'm sorry, Your Honor. I misspoke, and the Court is correct. It is – Well, I mean, you know, I wish you knew how many hours I spent on this. Well, Your Honor, again – I'm sorry.  The first question is, did he have constructive notice of the offset on which he had that meeting with someone from the plan and when he says he first learned about the offset? Your Honor – I mean, he did have constructive notice of the offset, right? He got that a couple of years after he first came in. Your Honor – Was it 94? 96, Your Honor. Whatever it was. Respectfully disagreeing with the court, I think that the three or the six year statute of limitations in 1113 has no application here and the reason – Tell me why it doesn't. It has no application here – Why doesn't it? Because by the language of that statute, it's limited to actions under this part. And this part references Part IV of ERISA, and Part IV of ERISA deals with actions by fiduciaries that are engaged in investment-type decisions, such as the prudent man rule and such as the, you know, the dealing with conflicts of interest. And Mr. Bruno is not alleging a violation of any duty in Part IV. And because we're not alleging a violation of any duty in Part IV, then 1113 simply has no application here, Your Honor. It's entirely a red herring. And probably that's one of the reasons why it wasn't raised below is because it was fairly clear to everyone below that the standard from Wessel is the standard that applied. And that involves a four-year statute of limitations, and that four-year statute of limitations, which begins to run when a claimant knew that his claim had been denied or had reason to believe that his claim had been denied. And both of those require an actual claim and an actual denial before the statute could begin to run. Well, except in many of these equitable claims, you're not talking about a particular claim. Well, you know, Your Honor. I mean, you're talking about the way that the claimant. Notice. We're talking about notice. Your Honor, I think that it's a mistake to treat this as a, I mean, you know, we've pledged an equity because Amera, in what was frankly a very surprising decision, decided that this claim had to be bought under A3 instead of A1B. But prior to Amera being handed down, Mr. Bruno's claim was a pure benefits claim. Sure. You know, he's seeking his benefits under the plan. And prior to Amera being handed down, I would have filed that lawsuit as an 1132A1B claim for benefits. But, Your Honor, I mean, you're asking for a decision, though, that says that the benefits accrual date applies to equitable claims. And I'm not so sure that it's always an easy pigeonhole to substitute one for the other. And I think you're probably correct that it's not an easy substitution to substitute the 1113 for the injunctive. Your Honor, I just need to point out that the sort of the way Mr. Bruno has been whipsawed by the law is that prior to Amera coming down, it was fairly clear law that his claim would be under 1132A1B, Wessel would apply, and it would begin to accrue from the final denial, which when we filed the lawsuit was about, you know, a month and a half ago. I don't know that we get to overturn the Supreme Court, though. But then Amera coming down, we go from the claim being barely accrued to being time-barred. Your Honor, that can't be the right law, I submit. The – and I think I'm – it looks like I'm out of time here. I'd be happy to respond to any questions that the Court may have. No, we've read the briefs. Thank you. Thank you, Your Honors. Appreciate the clarification. Thank you. Good morning, Your Honors. May it please the Court. Christopher Caldwell for Respondent, Time Warner Pension Plan, the only defendant in this action. Why wasn't 113 raised in the district court? Your Honor, I don't have a good answer for that. I think we should have raised it in the district court. Why isn't it waived?  It's a fair issue of law. It's an issue that it's appropriate for this Court to provide guidance to the district courts on. We did look more closely at the – we looked more closely at the issue when we received the Respondent's opening brief here and how they framed the claim as presented here and when we looked at the issue. They framed the claim on whistle all along. You're the one that pushed it into the equity side. We did, Your Honor. And we – Both agreed that they're not suing a fiduciary. Right. So what's the equity here? We all agree in front of this Court that we're not suing a fiduciary. That was – that's conceded by the – by the appellant here. But we're looking at equitable tolling. What we're looking at, of course, Your Honor, is what statute of limitations applies to an A3 claim, which is an equitable claim. All right. Contrary to what the appellant seems to suggest. Why isn't it 1113? It is 1113. We believe it is – we believe it is 1113, Your Honor, and we believe it's – And so what is the – what is the period of the statute? As Your Honor correctly pointed out, it's six years from the – well, the longer of, three years from when he – when the appellant was on notice of the claim, or six years from the date of the breach. And the breach here was 1991. Okay. If we're – so when he first – when he first got the planned summary, it didn't talk about the offset, right? That would have been 1991, Your Honor. 1991. So nobody mentioned it to him. Huh? That's – that's his – that's the allegations in the complaint which we accept, Your Honor. It was, of course, mentioned to him in 96. It wasn't there. It wasn't mentioned until 96. Yes, Your Honor. Yeah. And is there any evidence that – so he had constructive notice. He definitely had constructive notice in 96. He didn't have actual notice. That's – he says he didn't get actual notice until he sat down with someone from the plan in, what was it, 2008, huh? Yes, Your Honor. Okay. And so if you need actual notice, it's going to start sometime in 2008. You've got three years from whatever it was in 2008. The three-year prong would run – if you need actual notice as opposed to constructive notice, then the three-year prong would run from 2008. Let's assume you need actual notice. I'm sorry, Your Honor? I'm assuming you need actual notice. Well, but for the six-year prong to apply, you don't need actual notice, and that was clear in the Landwehr decision. We can forget about the six-year prong. What about the three-year? I don't think you need actual notice under the three-year prong. Tell me why you don't, if it's equitable under 1113. Your Honor, if you only focus – Your client had the duty at that time to comply with the rules and have that offset clearly stated in the plan summary. If you only focus on the three-year plan and in terms of what is equitable, it is not equitable to charge the plan, which is the only defendant here, for benefits that are not owed under the plan because of an alleged violation by someone other than the plan. The SPDs are not – the summary plan descriptions are not prepared by the plan. Who puts out the summary? The summaries are put out by the administrator, and that's clear under the statute and under the Amara decision, Your Honor. So there is no basis for any equitable relief against the only defendant he has sued  And, of course, the reason he hasn't sued other defendants, sued the administrator, is because that plan or that claim unquestionably would fall under 1113. It would be a claim under Section 1109, which is Part 4, which is the part that Section 13 – or Section 1113 applies to, because it's a claim for breach of the duty to provide full – fiduciary duty to provide full and accurate information about the plan. And that does seem to be the nature of this claim. So what, then, is the relevant statute of limitations? The relevant statute of limitations, we believe, Your Honor, is Section 1113. And – What? You said 1113 shouldn't apply in terms of its statute of limitations because you don't like the three years after the earliest date on which he had actual knowledge. No, because we think when – the six-year – you can't ignore the six-year prong, Your Honor. But even under the three-year prong, we think that actual knowledge is not required in a situation like this where equities would not support a remedy against the plan. But the six-year prong is intended to provide an outside limit. So it's the earlier of either six years from the arguably bad act or three years from the actual notice. That's correct, Your Honor. Whichever comes first. Whichever comes first. And the whichever comes first here would be in six years after 1991, which is 1997. Or six years after 96. Or six years after 96. Either way, he's – Go to kind of a different question. Well, you pick and choose the one you like that fits in how you like it to come out. Your Honor, I actually think we're being consistent. It's 1113 and we win under 1113. When you apply both prongs to the – actually, under either prong, but certainly under the six-year prong, he's out in the cold, Your Honor. Does either Landwehr or Ziegler require that there be an actual notice component before the statute can start to – I actually think Landwehr is clear that there is no requirement of actual notice. Because in Landwehr, Judge Reinhart talked about the virtue of finality with the six-year outside date. And the decision there specifically says that the six-year supplies absent fraudulent concealment, which, of course, is in the statute itself. Here we know there's no conceivable claim for fraudulent concealment because it was disclosed in 1996. That is in the complaint that the plaintiff has filed here. The way I analyze it, I looked at the three-year period, under 1113. All right? And so the three-year period, if you required actual knowledge, would start somewhere in 08. But we don't know the date that he sat down with this individual from the plan who – I don't know what the meeting was. I think maybe I'm – I think there was a meeting of a number of participants in the plan, and that's when he first learned about the offset. That's what I remember. Yes. He said there was a meeting of – a pension meeting, I think he said, attended by eight or ten people sometime in 08. Eight or ten people. So, you know, I can assume that maybe there were only eight or ten people that were in both of these plans. And because you have to get in that situation, you have to be a director or whatever it's called. And so he says that's the first time he had knowledge of the offset. So depending on when that meeting was, that's when the three-year period would run. If actual notice is required, the three-year period would run from there, Your Honor. I'm not in the position that actual notice is required. But under the six-year provision, which is part and parcel of the same statute, it's from the date of the alleged breach. And there's a good reason for that when you're seeking benefits, not benefits that are funded under the plan. This is not a claim for benefits under the plan. This is a claim for benefits that are not available under the plan. They were not funded, and there should be a cutoff date. Who signed him up for the good plan, you know, the more generous plan? Who signed him up for that? He chose to accept what was, whether you call it a promotion or a lateral, the better job at Warner Brothers under the more generous Time Warner plan. But that doesn't mean he gets two pensions. He gets the one pension under the more generous plan, and that's what the plan – there's no dispute, that's what the plan document says. If you're eligible for two, you offset the second pension. He's getting the benefit of the more generous pension. He's just not getting the more generous pension and the less generous pension. I understand. I understand that. Can you walk us through his – your rebuttal to his opening response, counsel's opening response to your 1113 claim? He says that 1113 is limited, and all of this discussion between three and six is irrelevant, because 1113 only gets triggered where there is a true fiduciary, sued as such as an investment manager, and therefore 1113 does not apply. You're saying we didn't see it that way. We agreed with that in the district court because we didn't raise 1113, but now we do, and now we say 1113 applies, and it's dispositive in your favor. And let me try and just walk through that exact question, Your Honor. The starting point is what is the underlying violation in order to determine what statute of limitations applies. That's what Tybill v. Edison International, that was decided just six weeks ago by this Court. We're asking you for a walk-through, not for a speech. Okay. We start with what's the underlying violation. The underlying violation here is not benefits denied under the plan. It is a failure to provide accurate information about the plan. That's either because some time or an employee provided bad information or failure to provide accurate information in the 1991 summary plan description. Those are claims, the duty to provide plan, accurate plan information, is a fiduciary duty of the plan administrator, and a failure to fulfill that duty is actionable under section 1109, which is part four of the ERISA statute, and which is subject to statute of limitations contained in section 1113. And that statute applies even when suing a non-fiduciary for his role or participation in a violation of a fiduciary duty owed by the administrator. That's the Landwehr case, where section 1113 was applied for claims against a non-fiduciary. And then there are two recent decisions. Postamara, the law is developing in this area, and, Your Honor, I'll be happy to provide the full sites to you because they were not in our brief. 28J supplemental letter. Yes. One of them is National Security Systems v. IOLA. It's out of the Third Circuit, 2012, very recent. 700S3. That's okay. Just, you know, give us don't take up the time with. Okay. And then just finally the Webb v. Gardner-Carton case, which is the exact claim here. A 502A3 claim based on an inaccurate SPD. Name of the case? Webb, W-E-B-B, v. Gardner-Carton out of the Northern District of Illinois on October 22nd of 2012. So the point is, even if you're suing a non-fiduciary, if you're suing them for a breach that arises out of a fiduciary obligation for an unfunded benefit, 1113 applies, and that makes sense because you need a cutoff from the date of the breach when you're going to be giving someone benefits that haven't been funded under the plan. Well, can you bring a suit? Does Matthews tell us, though, that you can only bring the fiduciary claim against fiduciary? Matthews definitely says that, Your Honor. And the only exceptions to that, such as Harris Trust. I'm sorry. Go ahead. The only exceptions to that have been cases where the claim against the non-fiduciary are because of the fiduciary's involvement with or participation with the fiduciary. The Landwer. Yes, like the Landwer case. And so that's why, once again, you go back to the statute for claims against fiduciaries in Section 1113. So that's how we get around Harris Trust? I don't think you have to get around Harris Trust, Your Honor. That's how we get around Matthews, then. I think Matthews has to be read in light of Harris Trust and other decisions which say if there's going to be any claim against the fiduciary, they have to be because of their participation. Against the non-fiduciary, they have to be because of their participation with the fiduciary. If a lawyer guy that works in this business gets involved in one of these ERISA matters, how the hell is he supposed to know all this? That's why they have lawyers. That's why they have lawyers, Your Honor. In this world. And if he was so concerned about that this was important to him, he should have been reading his summary plan description not just in 91 but in 96 and in each subsequent year when he received. But he's never get to work. That's. The Landward. Was that an A3 claim? I'm sorry. In which case? Was the Landward claim? I thought it was a claim against a chauffeur of a fiduciary. It was. The reason I raised the point was you cited earlier. You're not up there. You just sit there. I'm sorry. Down. The decision reads we now expressly hold that the limitation period in this in an ERISA action begins from the date that the person bringing suit learns of the breach or violation. So even it sounded a bit like even in the claim for equitable relief, it doesn't start until there's actual knowledge. If you go to the next page of the decision, Your Honor, there's a discussion of the six-year outside statute and the virtues of the important and the benefits of the six-year outside cutoff on claims. And what Judge Reinhart says there is that six-year cutoff applies absent fraudulent concealment. Well, Reinhart probably had a different set of facts. You're talking to Preggers. I recognize that. I think we've got it. Unless the Court has further questions. I love Reinhart. Thank you, Your Honor. What did you say? We need the help. Sure. Your Honor, the point is, is nothing counsel said gets us away from the language of 1113, which requires it to be a violation of this part, which is in reference to Part 4. All the cases cited by the plan, including Landwehr, Kunz, Browns v. Owens, all involved claims, breaches of fiduciary duty contained in Part 4. If this Court goes outside of Part 4 to apply 1113, it will be doing something this Court has never done before. Wasn't he making the argument that your real claim is the claim that the summary plan description was a fiduciary obligation and was inaccurate? Well, Your Honor, I mean, that's half right, Your Honor. Our key argument is that the plan, plan fiduciary, has got an obligation to provide an accurate summary plan description. They failed to do so, but that obligation is contained. Isn't that a Part 4 obligation? No, Your Honor, it's Part 1. The complaint is very clear. The statutory section is Section 1022. 1022 is contained in Part 1. But the first time, the first summary he got when he joined that ---- That's correct, Your Honor. The first summary was inaccurate. The obligation for ---- Well, the summary was inaccurate, but the rest of the stuff was in there if you read all those other pages. Well, the summary was inaccurate on the key point that we're contending, which is that Mr. Bruno was not informed that these offsets were going to be taken in spite of the fact it was a detailed calculation. But the point is, is that 1022, which the complaint is specific, that's what we're bringing this claim under, is in Part 1. So even if we were to allege a breach of a fiduciary obligation to fail to provide an accurate summary plan description, that would be a breach of fiduciary duty arising under Part 1 rather than Part 4. And 1113 says it only applies to violations of this part, and this part is Part 4. So 1113 simply doesn't have any application here under not only the rulings of this prior rulings of this Court, but the clear statutory language. Thank you. Thank you, Your Honor. I see that as your only lifeline. You'll take whatever you can get. Hopefully it's a nice thick lifeline, Your Honor. Thank you very much. Thank you. Well, on your 28J letter, you lay all this out, huh? Sorry, Your Honor. You were giving us your first start of answer, Judge Fischer's question. Remember? Give us the road map. Yeah. Well, we may ask for supplemental briefings. Yeah, we may ask for that. Yeah, in light of the new cases. We'll let you know. We'll let you know. Thank you, Your Honor. Thank you, Your Honor. Okay.
judges: Gwin, Pregerson, Fisher